(98 App. Div. 568)

## HUDSON RIVER POWER TRANSMISSION CO. v. UNITED TRACTION CO.

(Supreme Court, Appellate Division, Third Department. November 22, 1904.)

1. ACTION ON CONTRACT—SUFFICIENCY OF COMPLAINT—EFFECT OF ANSWER.
   Where a complaint alleges a contract "ready to be produced when and where the court may direct," but only a part of the provisions of which were set out, a copy of the contract attached to the answer, to which plaintiff demurs, cannot be read on the trial as a part of the complaint.

**2. PLEADING—EFFECT OF DEMURRER AS AN ADMISSION.**

The admission of the truth of the statements contained in a pleading·
is implied on a demurrer thereto, only for the purpose of testing the
sufficiency of that pleading, and does not bar the one who demurs from
disproving them on the trial, nor from disputing them when his own
pleading is being analyzed to determine its sufficiency.

**3. COUNTERCLAIM—VIOLATION OF CONTRACT IN SUIT.**

The contract by which a power company agreed to furnish a specified
amount of electrical energy provided for monthly payments therefor. It
also provided for furnishing all the company's excess energy, to be paid
for at the end of each year, and that the contract is entire, "each stipu-
lation thereof being a part of the consideration for every other." *Held*,
in an action by the power company to recover for energy furnished a speci-
fied month, that an allegation that during that month plaintiff produced
a large amount of excess energy, which, in disregard of its contract, it
sold and delivered to other persons, to defendant's damage in a specified
amount, without alleging that defendant had performed the obligations on
its part, does not show a proper counterclaim.

**4. SAME.**

Under Code Civ. Proc. § 501, providing that a counterclaim "must tend in
some way to diminish or defeat plaintiff's recovery," the allegation in an
answer that plaintiff, on a specified date, ceased and ever since has refused
to furnish any electrical energy under its contract for a term of years,
constitutes a proper counterclaim in an action by the power company to
recover for such energy furnished during a prior month.

**5. SAME—EQUITABLE DEFENSE.**

In an action by a power company for a monthly installment of the con-
tract price of power furnished, wherein it is claimed by plaintiff that de-
fendant has rescinded the contract and is thus liable for prospective profits,
an answer stating facts in excuse of nonpayment of the installment, and
alleging that defendant has always been ready and willing to perform the
contract on its part and offers to proceed with its performance, shows an
equitable defense against plaintiff's claim that defendant had rescinded the
contract, and would warrant relief against the claim for prospective
profits.

Parker, P. J., and Houghton and Chester, JJ., dissenting in part.

Appeal from Special Term.

Action on a contract by the Hudson River Power Transmission Com-
pany against the United Traction Company. From a judgment over-
ruling a demurrer to the answer (88 N. Y. Supp. 448), plaintiff appeals.
Affirmed in part and reversed in part.

The plaintiff, the Power Company, brings this action against the de-
fendant, the Traction Company, to recover damages for a breach of con-
tract entered into and bearing date August 1, 1901. The defendant inter-
posed a long answer, consisting of 12 separate defenses. To the 9th, 10th,
11th, and 12th of such defenses the plaintiff demurred separately, substan-
tially on the ground that it was insufficient in law upon the face thereof.
Upon the trial of such demurrers the defendant attacked the plaintiff's com-
plaint upon the ground that it did not state a cause of action. The trial
judge so held, and therefore overruled the demurrers. From the interlocutory ·
judgment entered thereon this appeal is taken.

Argued before PARKER, P. J., and SMITH, CHASE, CHES-
TER, and HOUGHTON, JJ.

¶ 2. See Pleading, vol. 39, Cent. Dig. §§ 525, 534.

Henry W. Williams (Richard Lockhart Hand, of counsel), for appellant.

Patrick C. Dugan (J. S. Landon, E. L. Fursman, and Albert Hessberg, of counsel), for respondent.

PARKER, P. J.   I do not concur with the trial judge in his construction of this complaint.   It states that the Power Company and the Traction Company, on or about August 1, 1901, "entered into a contract in writing, bearing date on that day, ready to be produced when and where this court may direct, whereby," etc., and then proceeds to give the substance of the agreement therein, as it understands it; sets forth wherein it claims the Traction Company has broken the same; states the balance due for "energy" delivered thereunder; and seeks to recover such balance and damages suffered on account of such breach. The defendant has annexed to its answer a copy of a contract, which it alleges therein is the same one to which the complaint refers.

Upon the trial it argued that because of the statement in the complaint above quoted, that such contract was ready to be produced when and where the court ordered, the contract so annexed to its answer must be deemed annexed to the complaint, and must be read as a part of the complaint, and that, when so read into the complaint, the facts appearing in such complaint did not warrant a recovery.   The trial judge so held.   It is not claimed that the complaint on its face, and as it states the contract to be, fails to state a cause of action.   Concededly it is a good complaint, and not demurrable, unless facts which appear in the copy of the contract annexed to the defendant's answer are to be added to the averments in the complaint.

Manifestly, the production of such copy by the defendant is not a production of the contract by the plaintiff.   It is not in court upon the plaintiff's response to the order of the court.   It is produced by the defendant, and it may or may not be a correct copy of the contract upon which the plaintiff brings this action.   The defendant, however, having averred in the answer that it is the same contract, it is claimed that it must now not only be so considered, but that all its provisions must be deemed averments of the complaint.

But an admission of the truth of the statements contained in a pleading is implied, upon a demurrer, only for the purpose of testing the sufficiency of that pleading.   It does not concede their truth for any other purpose.   It does not bar the one who demurs from disproving them upon the trial, nor from disputing them when his own pleading is being analyzed to determine its sufficiency.   For the purpose of construing the defenses to which the plaintiff has demurred, all the statements of fact in them contained are to be taken as true; but that by no means operates to transfer such statements or facts to the complaint and make them a part thereof.   The sufficiency of the complaint should therefore be determined upon the facts which are alleged therein, and those only should be considered.

But assume that every provision contained in the contract was specifically set forth in the complaint, it would still, in my judgment, sufficiently set forth a good cause of action against the defendant.   By that contract the Power Company undertakes to

furnish to the Traction Company for a period of 10 years, a certain specified amount of "electrical energy" for each year, and which yearly amount is specifically distributed among the several months of the year in varying proportions, and for which the Traction Company agrees to pay the sum of $70,000 annually, such payment to be distributed among the several months of the year in certain specified sums, and to be made on or prior to the 10th of each succeeding month. The performance of the contract was to commence on July 1, 1902. It was further provided by the fourth article of the contract that "if, by reason of accident, lack of water, or other matter beyond its control, the Power Company shall at any time be unable to furnish the electrical energy continuously in accordance with the terms of this agreement," the deficiency so arising in the energy furnished for any month should be compensated for by deducting from the amount agreed to be paid for such month a sum equal to $\frac{3053}{10000}$ of a cent per horse power per hour for the amount of such deficiency during the period of its occurrence, and such amount was fixed as liquidated damages for the failure on the plaintiff's part. It was further provided by the sixth article of the contract that the Power Company should also deliver to the Traction Company all the electrical energy, in excess of the amount above required, that the Power Company could produce at its water power plant, provided that the Traction Company should not be obliged to receive in any one day "excess energy" amounting to more than 500 horse power. Provision was also made for the amounts and times and manner of ascertaining and paying for the same by the Traction Company.

With the contract so annexed, the contention is as follows: In order to recover against the Traction Company for a breach of this contract, the plaintiff must show, and hence must aver in the complaint, a full performance on its part. The third paragraph contains an allegation to that effect, but the fourth paragraph contains a statement that it delivered all the energy that it was required to deliver during the month of August, 1903, "less certain small deficiencies." By the fourth article of the contract deficiencies to a certain extent, viz., such as occurred through matter beyond the control of the Power Company, were permitted, and provision was made for a money compensation for the same. And if it appeared in the complaint that such deficiencies occurring in August were of the kind so permitted, then their existence would not necessarily modify the averment in the third paragraph, and be a concession that full performance had not been made. In that event both averments might be consistent. And so in the original complaint, it being left to appear that such a money compensation might be made for all deficiencies, a concession of nonperformance could not be claimed from the averments in its fourth paragraph. But, now that the full terms of such fourth article are found in the complaint, a clear admission appears in its fourth paragraph that default was made in furnishing the requisite amount of "energy" for August, inasmuch as it is nowhere alleged that such deficiencies were occasioned by means beyond the Power Company's control. And hence the complaint is claimed to be insufficient, because it appears therefrom that the plain-

tiff, not having fully performed on its part, is not entitled to recover the damages which it claims.

But the same fourth paragraph of the complaint shows that this argument should not prevail. It proceeds to state that the Traction Company estimated and fixed the amount of such deficiencies, at the rates provided therefor in the contract, at the sum of $210.26; that the Power Company accepted and allowed it upon the $4,670.84, which the contract required the Traction Company to pay for said month of August; and that the balance only, viz., $4,460.58, is the amount for which such company made default on September 10th, and for which this action seeks to recover.

It is apparent, therefore, that the "certain deficiencies," conceded to exist in that paragraph, were of the kind referred to in the fourth article of the contract. They were of the kind for which compensation could be made by the method and at the rate fixed in the contract. The complaint shows that such compensation at such rate was actually made and adjusted by the parties hereto, and the claim for the balance due to plaintiff is made up on such adjustment. Clearly such an averment is entirely consistent with the allegation of full performance contained in the third paragraph of the complaint. That general allegation is not in the least contradicted or qualified by the allegations of paragraph 4, even though it is not specifically stated therein that such deficiencies were of the kind referred to in the contract.

The further claim, that no averment of the delivery of all the "surplus energy" referred to in the sixth article of the contract is contained in such complaint, is not correct. It is fully covered by the allegations contained in the third paragraph, above referred to.

I conclude that the criticism of the complaint is not sustained, and that it becomes necessary to examine the demurrers to the several defenses, each on its own merits.

As to the ninth defense, it sets forth the contract between the parties, and claims that by its terms the Traction Company had been entitled, ever since July 1, 1902, to have delivered to it by the plaintiff, in addition to the electrical energy provided for in article 1 of such contract, all that the plaintiff's water power plant therein referred to was capable of producing. It then proceeds to aver that during the month of August, 1903, it produced a large amount of such excess energy, which, in disregard of its obligation, it sold and delivered to other parties, and failed and refused to deliver it to the Traction Company. That by reason of such refusal to deliver such additional electric energy during August, 1903, the Traction Company suffered damage to the amount of $1,073.20, and it asks to recover such damages as a counterclaim in this action. These are all of the material allegations contained in such defense.

It appears in the sixteenth article of the contract that the "agreement is an entire contract, each stipulation thereto being a part of the consideration for every other." It further appears in such contract that payment for such excess of electrical energy was to be made at the end of each year, and that the Traction Company shall notify the Power Company by mail each day of any "excess of energy used." This contract being entire, and each stipulation being dependent upon every oth-

er, evidently the Traction Company could not recover against the Power Company for a breach of any of its obligations, unless it had fully performed all the obligations which it had assumed on its part. There being no allegation to that effect in this ninth defense, no right to recover damages against the plaintiff for a breach of the contract is stated therein. Moreover, this defense is pleaded solely as a counterclaim, and for the same reasons as hereinafter stated with reference to the tenth defense, as well as for the above reason, the demurrer thereto was well taken.

The tenth defense is also pleaded entirely as a counterclaim. It sets forth the contract, and then charges that at midnight on September 10, 1903, the Power Company had ceased to deliver any "electrical energy" whatever to the Traction Company, and had ever since willfully refused to deliver any, and wrongfully continued to violate all the obligations of the contract on its part. It then avers that the Traction Company has at all times fully performed the contract on its part. It then avers that performance of the contract by the Power Company would have proved very profitable to the defendant, because the price for "electrical energy" which it was to pay under the contract was much less than it could otherwise procure it, and that, therefore, by reason of such breach, it had suffered damages to the amount of $1,369,444.44, and it asks to recover that amount as a counterclaim against the plaintiff.

The plaintiff claims that in an action brought by it to recover damages against defendant for a breach of the contract on its part the facts above pleaded cannot be used to sustain a counterclaim in defendant's favor. The demand which such facts would create in favor of defendant "would not tend in some way to diminish or defeat the plaintiff's recovery." Code Civ. Proc. § 501. Evidently, if the facts therein stated are true, and the plaintiff has failed to perform the contract as therein alleged, it cannot maintain this action; and so the very facts which are relied upon and are necessary to create this counterclaim operate as a full and complete defense to the plaintiff's claim in this action, and show that it never existed. So that, if the plaintiff's claim can be established, the counterclaim must fail; and, if the counterclaim is proven, the plaintiff's claim cannot exist. Such conflicting claims cannot coexist, and hence the one does not tend to diminish or defeat the other. Bellinger v. Craigue, 31 Barb. 534; City of Schenectady v. Furman, 61 Hun, 171, 15 N. Y. Supp. 724; Prouty v. Eaton, 41 Barb. 409; Walker v. Am. Cent. Ins. Co., 143 N. Y. 167, 38 N. E. 106. See, also, Reilly v. Lee, 85 Hun, 315, 32 N. Y. Supp. 976, affirmed 155 N. Y. 691, 50 N. E. 1121.

For this reason the counterclaim stated in the tenth defense is not well pleaded, and the demurrer should be sustained.

As to the eleventh defense, it is not pleaded as a counterclaim. It states facts claiming to excuse the defendant's default in not paying the amount required by the contract to be paid by the defendant by September 10, 1903, for the "energy" delivered in August previous; avers that it has always been ready and willing to perform the contract on its part, and now offers to proceed with and perform the same. It also states that it has not rescinded the contract, and refuses so to do.

I am of the opinion that the facts therein stated tend to establish an

equitable defense against the plaintiff's claim that the defendant had rescinded and abandoned the contract in its entirety; and that, if established, would warrant equitable relief, at least against the claim for the prospective profits demanded in the complaint. I think a defense to that extent is set out, and hence the demurrer thereto was correctly overruled.

The twelfth defense, although it charges an unlawful combination between the plaintiff and two others, seems to contain no facts which even tend towards a defense to the plaintiff's demand in this action, or towards a counterclaim thereto, other than the fact that the plaintiff had broken contract "A," so called, at midnight on September 10th, to defendant's great and serious injury. It does not tell in this 12th defense what contract "A" was, nor whether the defendant had performed on its part. I cannot discover that it sets forth any defense, nor any facts constituting a counterclaim; certainly no more than were contained in the ninth and tenth defenses, which we have seen above are both demurrable.

My conclusion is that the demurrer to the eleventh defense set up in this answer was properly overruled, and that the demurrers to the ninth, tenth, and twelfth defenses should have been sustained.

My Brethren, however, while they concur in my conclusions and in my reasoning concerning the ninth and eleventh paragraphs set up in the answer, do not agree with me concerning the tenth and twelfth paragraphs therein contained. As to such counterclaim and defense they are of the opinion that the demurrer to each should be overruled, and the judgment of this court is rendered accordingly.

Interlocutory judgment reversed and demurrer sustained as to the ninth defense, and overruled as to the tenth, eleventh, and twelfth defenses in the answer, with leave to the plaintiff to reply to such counterclaims the demurrer to which has been here overruled, and with leave to the defendant to amend the ninth paragraph of his answer as he may be advised. No costs to either party. All concur, except PARKER, P. J., who votes to sustain the plaintiff's demurrer as to the ninth, tenth, and twelfth defenses; and CHESTER and HOUGHTON, JJ., who vote to overrule the demurrer as to all the defenses demurred to.