### CASPARY v. HATCH.

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

SET-OFF AND COUNTERCLAIM (§ 29*)—PLEADING—ACCRUAL.

　　Code Civ. Proc. § 501, subd. 1, provides that a counterclaim must be a cause of action arising out of a contract or transaction set forth in the complaint or connected with the subject of the action, and must tend in some way to diminish or defeat plaintiff's recovery, and subdivision 2 authorizes the pleading of a counterclaim "in an action on contract, any other cause of action on contract, existing at the commencement of the action." *Held*, that the counterclaim authorized to be pleaded by subdivision 1 need not exist against plaintiff at the time the action was commenced; that requirement only applying to counterclaims referred to in subdivision 2.

　　[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 49–51; Dec. Dig. § 29.*

　　For other definitions, see Words and Phrases, vol. 2, pp. 1645–1650; vol. 8, pp. 7620–7621.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by Alfred H. Caspary against Edward Hatch, Jr. From an order denying plaintiff's motion for judgment dismissing the counterclaim, plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Walter S. Doernberg, of New York City (Frederick F. Neuman, of New York City, on the brief), for appellant.

Louis W. Severy, of New York City, for respondent.

LAUGHLIN, J. This is an action by a stockbroker against a customer, for whom he was carrying an account on short sales transactions, for a balance of account after purchasing stock to cover the sales on the failure of the customer to properly margin the account, and thereby closing the account. The defendant by his amended answer put in issue the allegations of the complaint upon which the plaintiff predicates his right to purchase to cover, and pleaded a counterclaim for damages sustained through the failure of the plaintiff to execute an order to purchase stock to cover the short sales, which order is alleged to have been given two months and eleven days after the plaintiff claims to have closed the account by purchasing to cover, and after the commencement of this action. The plaintiff demurred to this counterclaim on the ground that it is not of the character specified in section 501 of the Code of Civil Procedure.

The theory upon which the demurrer was interposed is that, inasmuch as the cause of action in favor of the defendant pleaded in the counterclaim arose since the commencement of the action, it could not be counterclaimed. The learned counsel for the plaintiff is doubtless right in his contention that if, as the defendant claims, the purchase of the stock by the plaintiff to cover the short sales was not authorized or justified, such purchase does not concern the defendant, and is not binding on him, and therefore could not give rise to a cause of action in his behalf, and that the cause of action set forth in the counterclaim is not based upon such purchase, but upon the refusal and failure of the plaintiff to execute the order, given subsequent to the commencement of the action, to purchase stock to cover the short sales. It is manifest, therefore, that the cause of action set forth in the counterclaim did not exist at the time of the commencement of the action; and consequently it is quite clear that it would not be authorized under subdivision 2 of section 501 of the Code of Civil Procedure.

Section 500 of the Code of Civil Procedure provides, among other things, that the answer interposed by a defendant may contain a "statement of any new matter constituting a defense or counterclaim," and section 501 provides that the counterclaim must be "a cause of action arising out of the contract or transaction, set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action" in favor of the defendant against the plaintiff, and "must tend, in some way, to diminish or defeat the plaintiff's recovery." The plaintiff's cause of action is

based upon contract express or implied by which he claims it was. the duty of the defendant to keep the account properly margined, and it involves the account between the parties. It is quite clear, we think, that the cause of action pleaded in the counterclaim arose out of the same contract, and is connected with the subject of the action, for it is predicated upon the theory that it was the express or implied duty of the broker under the contract to purchase stock to cover the short sales when directed so to do by the defendant, and that by purchasing without authority and failing to purchase when directed he violated his duty to the defendant. Counsel for the appellant does not contend that the cause of action set forth in the counterclaim did not arise out of the contract or transaction upon which the plaintiff's cause of action is based, and was not connected with the subject thereof.

His argument is that no counterclaim is authorized by section 501 of the Code of Civil Procedure unless the cause of action therein pleaded existed in favor of the defendant against the plaintiff at the time the action was commenced, and he relies in support of this claim principally upon Reilly v. Lee, 85 Hun, 315, 32 N. Y. Supp. 976; Quayle & Son v. Brandow Printing Co., 116 App. Div. 9, 101 N. Y. Supp. 323; Bernheimer v. Hartmayer, 50 App. Div. 316, 63 N. Y. Supp. 978.

It would seem that the two subdivisions of that section of the Code of Civil Procedure are so plainly separate and distinct, and that subdivision 2 only, which relates to a counterclaim based on an independent cause of action, is limited to a cause of action existing at the time of the commencement of the action, as not to require construction; but the contention of the plaintiff finds support in dictum in the opinion in the cases cited and in others. Since we are of opinion that the Legislature plainly indicated by these statutory provisions an intention that it is immaterial whether the cause of action which subdivision 1 of said section authorizes a defendant to interpose existed in his favor at the time the action was commenced or at any time thereafter when he is authorized to interpose the pleading, we have no hesitancy in refraining from following such expressions of opinion which were unnecessary to the decision of the question before the court even though in one instance (Reilly v. Lee, supra) the Court of Appeals affirmed on the opinion containing such intimation (155 N. Y. 691, 50 N. E. 1121).

The case of Bernheimer v. Hartmayer, supra, was decided by this court, and it is expressly stated in the opinion that the cause of action set forth in the counterclaim did not arise out of the contract or transaction set forth in the complaint, and therefore the views expressed with respect to the existence of the counterclaim at the time the action was commenced had reference to a counterclaim arising under subdivision 2 of said section.

In Howard v. Johnston, 82 N. Y. 271, the Court of Appeals expressed the opinion, although it was not necessary to the decision, that it was not essential that a counterclaim authorized by subdivision 1 of section 150 of the Code of Civil Procedure, which was the same

as subdivision 1 of section 501, should be in existence at the time the action was commenced, and that case was followed as an authority on that point by Mr. Justice Ward in Corrigan v. Ritter (Sup.) 15 N. Y. Supp. 163. Moreover, it appears that this is the construction which has been adopted by the courts in three sister states where identically the same statutory provisions have been enacted, evidently copied verbatim from our Code of Civil Procedure. Slaughter v. Machine Co., 148 N. C. 471, 62 S. E. 599; Smith v. French, 141 N. C. 1, 53 S. E, 435; Stinnett v. Noggle, 148 Wis. 603, 135 N. W. 167; Hyman v. Jockey Club Co., 9 Colo. App. 299, 48 Pac. 671. The learned court at Special Term was therefore right in denying the motion.

It follows that the order should be affirmed, with $10 costs and disbursements. All concur.

---

## In re LANE'S ESTATE.

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

1. WILLS (§ 692*)—CONSTRUCTION—POWER OF APPOINTMENT.

 A will whereby testator gave property to trustees, with directions to pay the income to his three children and the children of any deceased child, and to divide the estate after the death of the surviving child on the grandchildren attaining full age, and which authorizes each child to dispose by will of the one-third of the property held in trust and remaining on the termination of the life estate, gives the children power of appointment, and, in default of its exercise, the remainder will go to the issue of the children.

 [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1654; Dec. Dig. § 692.*]

2. TAXATION (§ 885*)—TRANSFER TAX—PROPERTY SUBJECT TO.

 Where beneficiaries under a will creating a trust to pay the income to them for life, and empowering them to dispose of the property by will, and declaring that, in default of the exercise of the power, the remainder should go to their issue, the payment of a transfer tax on the remainder was suspended under Consol. Laws 1909, c. 60, § 220, as amended by Laws 1910, c. 706, until the power of appointment was exercised; since it was the exercise of the power, and not its creation, which affected taxable transfer.

 [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1706, 1707; Dec. Dig. § 885.*]

Appeal from Order of Surrogate, New York County.