(96 App. Div. 270.)

### STRAUS v. BUCHMAN et al.

(Supreme Court, Appellate Division, First Department. July 13, 1904.)

1. CONTRACT—SUPERVISING ARCHITECTS—DUTY.

Architects employed to superintend the construction of a building are bound to exercise reasonable care and diligence in supervising the work.

2. SAME—NEGLIGENCE—JURY QUESTION.

In an action against architects employed to superintend the completion of a building partially constructed, to recover damages for alleged negligence in supervising the work, evidence examined, and *held* that the question whether the architects were guilty of negligence was for the jury.

3. SAME—STATUTE—EXCUSE.

Where architects who were employed to supervise the completion of a partially constructed building permitted certain beams therein to rest on stud partitions, in violation of the express provisions of Laws 1892, p. 547, c. 275, § 476, they are not absolved from liability for negligence by proof that the beams were placed on the partition intermediate a morning and afternoon inspection of the same day, and so covered with flooring as to prevent defendants from seeing how the work had been done.

4. SAME—PARTIAL CONSTRUCTION OF BUILDING—EFFECT.

Where architects were employed to complete a partially constructed building, they are not relieved from the exercise of reasonable care and diligence in ascertaining whether timbers already placed in the building were properly fastened.

5. SAME—MEASURE OF RECOVERY.

In an action against architects employed to supervise the construction of plaintiff's building, plaintiff ˙may recover such sum as will leave him as well off as he would have been, had the architects performed their contract.

6. SAME—COMPLAINT—AMENDMENT DURING TRIAL.

In an action against architects for negligence in supervising the construction of a building owned by plaintiff, predicated on the negligent placing of beams on a stud partition, the complaint was properly permit-

ted to be amended during the trial to allow proof of the negligent placing of a trimmer against a side wall; such amendment neither changing the cause of action, nor introducing a new one.

**7. SAME—APPEAL AND ERROR.**

Error cannot be alleged in permitting an amendment to a complaint during the trial of an action—the amendment neither changing the cause of action, nor introducing a new one—in the absence of a request for adjournment on the ground of surprise.

Van Brunt, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by Ferdinand A. Straus against Albert Buchman and another. From a judgment for plaintiff, and an order denying a motion for a new trial, defendants appeal. Affirmed.

The plaintiff purchased a partially completed building in the city of New York, and employed the defendants, as architects, to superintend and supervise the remainder of the work to be performed thereon, which, under the contract of purchase, was to be done by the vendor. At the time of the purchase, a change in the plans, of which the defendants were fully informed, was agreed upon between the plaintiff and the vendor, by which the stairs leading from the first to the second floor were so altered as to necessitate the widening upon the latter floor of the opening called the "stair well," designated "A" on the following diagram:

The floor timbers upon that floor were at that time in place, and, in order to make the change, the tail beams, designated "D," had to be shortened, and the header, C, moved to the east. The plaintiff claims that in making these changes the vendor failed to properly fasten the ends of the tail beams, D, to the header, C, and that he also failed to properly attach the westerly end of the trimmer, B, to the side wall, which should have supported it. He alleges that the defendants, as superintending architects, were negligent in permitting the work to be done in the improper manner specified, and brings this action to recover the damages thereby sustained. The jury rendered a verdict in favor of the plaintiff for $2,663, and defendants have appealed from the judgment entered thereon, and also from the order denying a motion for a new trial.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Samson Lachman, for appellants.

Charles Strauss, for respondent.

McLAUGHLIN, J. The judgment appealed from is attacked principally upon two grounds: (1) That the evidence did not establish

¶ 7. See Pleading, vol. 39, Cent. Dig. §§ 659, 1409.

negligence on the part of the defendants; and (2) that there was no competent evidence of damage. I am of the opinion that the evidence sustained the verdict, both as to the defendants' negligence, and as to the damages suffered by the plaintiff by reason thereof.

It appeared that the building was completed in 1894; that the plaintiff immediately went into occupancy of it, and shortly thereafter the floors on the second story near the center of the house began to settle, causing a displacement of the wood and electrical work, and a breaking and cracking of the plaster and decorations; that frequent and extensive repairs became necessary, and, among others, the taking down and replacing of the wainscoting and molding, repeated readjustment of the doors of the rooms and wardrobes, putting up of moldings on the westerly side to cover the open space, and the redecorating of the walls; that this settling continued until 1898, when the situation became so serious that a thorough examination was made, a portion of the floor was taken up, and then the cause of the trouble was ascertained. It was found that while mortises had originally been cut into the header—marked "C" on the diagram set out in the statement preceding this opinion—to receive and hold the tenons upon the end of the tail beams, D, nevertheless, when those beams had been shortened for the purpose of widening the stair well, they were cut off square, and were not fastened in any manner whatever to the header, but depended entirely for support on the westerly end upon a light interior partition, designated in the record a "stud partition," upon which they rested. This partition had been insufficient to sustain the weight placed upon it, and by reason thereof the tail beams had given way, and a settling of from two to three inches had taken place. The examination had also disclosed the further fact that the trimmer, B, had slipped out of its socket in the westerly wall, and had substantially no support at that end and, by reason thereof, was not in its proper position. The witness Lowenbein, who made the examination, testified that the trimmer "was not long enough. It had dropped out of its place in the wall, and it may have dropped a matter of about two inches. * * * In dropping, this beam had carried with it the studding. The beam had dropped out of place, and was hanging down."

That these defects were serious was conclusively established by the results which followed. Here were important floor timbers placed without adequate support, and when the building was completed the defects were concealed by the flooring and plaster, and were unknown to the plaintiff when he took possession of the building. It was for the purpose of protecting himself against just such defects and improper workmanship that he employed the defendants as superintending architects, and, in the performance of their duties under the contract, they were bound to exercise reasonable care and diligence in supervising the work. Hubert v. Aitken (Com. Pl.) 2 N. Y. Supp. 711, affirmed without opinion in 123 N. Y. 655, 25 N. E. 954; Shipman v. State, 43 Wis. 381; Am. & Eng. Enc. of Law (2d Ed.) vol. 2, pp. 819, 820. And whether they did exercise such care and diligence was, under the evidence, a question of fact for the jury. Lorber, the person who actually represented the defendants in making the inspections of

the work, testified that he visited the house on an average of once a day, although sometimes he would skip a day when there was no occasion for his going there, and that it was the custom of superintending architects in New York City, under similar contracts, to do no more than he had done. He further testified that the tail beams were shortened and the header moved into its new position intermediate a morning inspection and one made on the afternoon of the following day, and that the flooring had then been laid over the timbers, so that he could not discover how the work had been done. But this did not exonerate the defendants from the charge of negligence. On the contrary, it was, in effect, an admission that the defendants' supervision of the work was so faulty that that part of it, involving the placing of important timbers, had been done without any supervision whatever, and without any knowledge on their part of how they were in fact placed. The placing of these timbers, and the manner in which they were secured, was not only a serious defect, but a direct violation of the statute in force at that time relating to the construction of buildings in the city of New York (section 476, c. 275, p. 547, Laws 1892), which provided that "in no case shall either end of a beam or beams rest on stud partitions." It was the duty of the defendants, under their contract with plaintiff, not only to see that the beams were properly placed, but especially to see that the placing of them conformed to the requirements of the statute. This they failed to do.

As to the trimmer, the defendants seek to relieve themselves from liability by showing that it was in place before they were employed as superintending architects; and the witness Lorber testified that prior to their employment the flooring had been laid upon this timber, so that the manner in which it was attached to the wall could not be seen by him. But his testimony is contradicted by the witness Carlew, who testified that, if the floor prevented an inspection from above, nevertheless such inspection could have been had from below; that "there was nothing to stop any man who walked into that building * * * from seeing by looking up." The fact that the trimmer was in place before the defendants were employed did not relieve them from exercising reasonable care and diligence for the purpose of ascertaining whether it had been properly fastened, because the subsequent work to be done under their supervision depended thereon.

Considering all the evidence, it seems to me clear that at the conclusion of the trial the question of defendants' negligence was for the jury, and their verdict—there being sufficient evidence to sustain it—ought not to be disturbed.

Nor do I think the amount of damages awarded excessive. The evidence, as already indicated, established the fact that numerous and extensive repairs were made necessary by reason of the defective work, the cost of which and other work necessary for putting the building in the condition in which it would have been, had the defendants performed their contract, would have justified a larger verdict. The plaintiff was entitled to recover a sum which would leave him as well off as he would have been, had the defendants fully performed their contract. 8 Am. & Eng. Enc. of Law (2d Ed.) 634.

It is also claimed that the court erred in permitting the complaint to be amended during the course of the trial. The improper placing of the trimmer was not enumerated in the complaint, but, when testimony concerning it was offered, an amendment was permitted so that such proof could be made. I think the amendment was a proper one. It did not change the cause of action, nor did it introduce a new cause of action. At most, it but specified more in detail the negligence of which the plaintiff complained. If the defendants were surprised by the amendment, and were unable to meet the testimony offered by reason thereof, then they should have asked for an adjournment upon that ground. But this they did not do, and it is apparent they were not surprised or injured by the amendment.

Other errors are alleged, but they do not seem to be of sufficient importance to be here considered.

The judgment and order appealed from must be affirmed, with costs. All concur except VAN BRUNT, P. J., who dissents.